BROWN, C.J.
Plaintiff, Kenneth Jackson, purchased a truck from defendant, European Service, Inc. As plaintiff was driving the truck home from defendant's lot, the vehicle stopped working. Defendant refused to refund the purchase price or replace the truck upon plaintiff's request, which was made one day after the sale. Plaintiff asserted a claim for fraud in the Monroe City Court. The trial court rendered a judgment in favor of plaintiff and ordered defendant to refund the purchase price, pay damages, attorney fees, and costs. For the following reasons, we affirm.
FACTS AND PROCEDURAL HISTORY
On August 29, 2016, plaintiff purchased a used 2010 Ford F-150 truck from defendant to use in Pennsylvania for work on a pipeline; plaintiff told defendant of his intended use for the truck. The truck's mileage was 195,285 miles at the time of sale. Plaintiff testified that the salesman who sold him the truck said of the vehicle, "It's a good truck, you know. It [will] do the job." During the test drive, the salesman asked as plaintiff drove the truck, "Is anything wrong? Do you feel anything up under the truck? Do you feel anything by your feet? Is it making any kind of noises?" Plaintiff testified that the test drive occurred in heavy traffic, so he was not able to drive the truck at a higher speed. Therefore, he told the salesman that he did not feel any shaking or hear any unusual noises during the test drive. Plaintiff testified that the "check engine" light was illuminated in the truck, and he asked the salesman why. The salesman responded, "Well, it's just probably a little sensitive. But it ain't nothing wrong with the truck." Toshano Nash corroborated her husband's testimony as to the questions the salesman asked as plaintiff drove the truck and what the salesman said regarding the truck's condition.
Defendant and plaintiff decided on a sales price of $13,500 for the truck, with an additional $199 for an inspection, a temporary tag, and notary work, for a total price of $13,699. Defendant's initial asking price for the truck was $16,000. No warranty appears on the invoice of sale. Plaintiff paid $13,200 in cash for the truck that day, and he planned to return the next day to pay the balance and get the title to the vehicle. Plaintiff then attempted to drive the truck home.
The truck stopped working while plaintiff was driving from Monroe to his home in Oak Grove. Plaintiff heard unusual noises and felt the truck shake. Plaintiff called defendant and was told that the truck probably needed a new battery. Plaintiff purchased a new battery for $200 and installed it in the vehicle; however, the truck still did not work. Plaintiff testified that he called defendant's salesman again and was told to return to defendant's lot the next day to have the truck repaired. The next day, August 30, 2016, plaintiff took the truck to Firestone, the repair *746 shop defendant told him would check out the truck. Plaintiff testified that a Firestone mechanic told him the motor was no good.
That same day, plaintiff returned to defendant's car lot to demand a refund of the purchase price or get a replacement vehicle for the truck. Plaintiff testified that defendant's representative, Ali Moghimi, stated, "[H]e can't get no money back or no vehicle. No nothing.... This is an as-is-car." Plaintiff then told Moghimi that the sale of the truck was a warranty sale, and that he had papers in the truck to prove there was a warranty.
Plaintiff gave the warranty papers to Moghimi, who then told plaintiff to "Get out." Plaintiff refused. Both Moghimi and plaintiff called the police. Plaintiff informed the police that Moghimi had taken his warranty papers. Moghimi's reply was, "What warranty papers?" Ms. Nash corroborated her husband's testimony that he and Moghimi argued over the warranty. Plaintiff testified that he then had to pay another $600 to Moghimi to get the title to the truck, and that a police officer had to make Moghimi turn over the title to plaintiff. Plaintiff had to get a ride to Pennsylvania with a coworker and share the expenses of the trip; plaintiff's share amounted to approximately $300.
Plaintiff filed a petition claiming fraud on September 1, 2016. Plaintiff sought damages "to pay all costs of this proceeding, refund the purchase price, and pay plaintiff's attorney's fees." Plaintiff averred in the petition that "defendant knew the truck was defective when defendant sold it to plaintiff."
On September 7, 2016, defendant filed a dilatory exception of prematurity on the grounds that plaintiff had signed an arbitration agreement when he bought the truck from defendant. Defendant was represented by Moghimi, who was not licensed to practice law in Louisiana. In the exception of prematurity, Moghimi sought dismissal of the suit because plaintiff did not first seek arbitration before filing his petition. Moghimi did not attach a copy of the arbitration agreement to the exception. A hearing on the exception was set for November 17, 2016.
On October 7, 2016, plaintiff filed a motion to stay the proceeding pending arbitration and a motion to strike the exception filed by Moghimi, urging that Moghimi was unauthorized to practice law in Louisiana. Plaintiff argued that a stay in the proceeding is appropriate when arbitration is demanded and there is an agreement for it. Plaintiff further argued that the exception should be stricken from the record because Moghimi, as a non-lawyer, cannot represent defendant, a legal entity.
On October 25, 2016, plaintiff filed into the record a letter he received from the American Arbitration Association ("AAA") dated October 25, 2016. The letter was addressed to "Ali Moghimi, European Service, Inc." AAA declined to administer the arbitration demanded by plaintiff because defendant, in the past, "failed to comply with the AAA's policies regarding customer claims," failed to timely submit arbitration fees, and/or did not waive certain provisions in its consumer contract that AAA deemed necessary. AAA had previously requested that defendant remove AAA from its consumer arbitration agreements so there would be no confusion for defendant's customers. AAA stated, "[W]e have administratively closed [plaintiff's] file and will refund any payment received by the filing party. According to R-1(d) of the Consumer Arbitration Rules, should the AAA decline to administer an arbitration, either party may choose to submit its dispute to the appropriate court for resolution."
*747 A hearing on the exception and plaintiff's motions was held on December 2, 2016. Plaintiff's counsel withdrew the motion to stay in light of the October 23, 2016, letter from AAA. On the motion to strike, Moghimi argued that he could represent defendant because the law allowed such legal representation when the claim was for less than $5,000, and the cost of repairing the truck's engine was less than that amount. Plaintiff's lawyer countered that the claim was for more than $5,000 because plaintiff sought a refund of the purchase price, $13,699, plus payment of costs and attorney fees.
Moghimi argued that the arbitration agreement between plaintiff and defendant allowed defendant to choose who would arbitrate the claim. Exhibit P-2, the invoice for the truck's sale, was discussed at the hearing and shown to the judge, but not admitted into evidence at that time. The invoice was admitted at trial. The last sentence of the invoice states in bold print, "THE PUCHASER AGGRESS [sic] TO AN ARBITRATION." Plaintiff's signature appears after the statement. The invoice does not state a particular arbitrator or specify what was to be arbitrated.
The trial court denied the exception, because arbitration had been attempted and rejected. The court did not rule on the motion to strike at that time. The order denying the exception was signed on December 8, 2016. Defendant, through Moghimi, filed a supervisory writ with this Court on January 19, 2017, seeking review of the trial court's ruling on the exception. The writ was not considered for noncompliance with court rules regarding sufficient documentation to allow adequate review of the trial court's ruling.
On April 3, 2017, the matter was set for trial and the trial court considered plaintiff's motion to strike at that time. Plaintiff's counsel reiterated his previous argument that Moghimi, who was not a lawyer, could not represent defendant, a legal entity. Also, the claim at issue was for more than $5,000. The court granted the motion to strike. The court ordered plaintiff's counsel to prepare a judgment for the court to sign.[1] Moghimi asked the court for more time to obtain legal counsel for defendant before proceeding to trial. Plaintiff's counsel stated that his client was leaving the area for work on April 13, 2017, and would not return for five months. The court set the trial date for April 10, 2017, and told Moghimi that he needed to secure legal representation for defendant.
The trial was held on April 10, 2017. Moghimi stated that he was not able to obtain legal representation in the time allowed and had filed a motion for a continuance on April 7, 2017.[2] Moghimi argued that he was "served with the paperwork Thursday afternoon [April 6, 2017] by Marshal's office," and that he was not defendant's agent for service of process, so there was improper service.[3] Defendant had his business paperwork filed into the record. This paperwork does not appear in the record and is not included in the exhibits. The record does note that the paperwork was entered into the record.
*748 The trial court denied the motion for a continuance and proceeded with the trial. The court heard the above testimony from plaintiff and his wife and ruled in favor of plaintiff. The judgment, signed on April 10, 2017, awarded plaintiff "the return of the purchase price, $13,699, damages in the amount of $2,900, reasonable [attorney] fees of $3,500, legal interest from judicial demand, and all costs of this proceeding." Defendant obtained legal counsel and lodged the instant appeal.
Defendant attached to his brief an arbitration agreement and a warranty agreement. Neither document appears in the record.
DISCUSSION
Defendant has urged four assignments of error: 1) the trial court erred in denying defendant's exception of prematurity based upon the arbitration agreement; 2) the trial court erred in rendering judgment in favor of plaintiff for return of the purchase price because the actual purchase price was less than the price awarded, plaintiff never tendered the vehicle to defendant for repairs, plaintiff refused to abide by the executed limited warranty, there was no proof any defect existed at the time of the sale, and plaintiff knew the vehicle might soon need repairs; 3) the trial court erred in rendering judgment in favor of plaintiff for the cost of repairs; and 4) the trial court erred in rendering judgment in favor of plaintiff for damages and attorney fees.
First, we consider the documents defendant attached to its appellate brief. Evidence not properly and officially offered and introduced cannot be considered. Swaggart v. Doe , 50,739 (La. App. 2 Cir. 04/05/17), 216 So.3d 1118, writ denied , 17-0758 (La. 09/22/17), 227 So.3d 822. Documents attached to memoranda do not constitute evidence and cannot be considered on appeal. Id. Appellate courts are courts of record and may not review evidence that is not in the appellate record, or receive new evidence. Id. The documents attached to defendant's appellate brief will not be considered since they were not entered into the record at the hearing on the exception of prematurity or at the trial.
Exception of Prematurity Based on an Arbitration Agreement
The failure of a party to arbitrate in accordance with the terms of an agreement may be raised either through a dilatory exception of prematurity demanding dismissal of the suit or by a motion to stay proceedings pending arbitration. Town of Homer, Inc. v. General Design, Inc. , 42,027 (La. App. 2 Cir. 05/30/07), 960 So.2d 310, writ denied , 07-1820 (La. 11/09/07), 967 So.2d 510. When the issue is raised by the exception pleading prematurity, the defendant pleading the exception has the burden of showing the existence of a valid contract to arbitrate. Id. Once the court finds a valid and enforceable arbitration agreement, and a failure to comply therewith, the court shall order arbitration. Id.
Here, defendant filed an exception of prematurity pending arbitration. Plaintiff filed a motion to stay pending arbitration. On October 25, 2016, plaintiff filed the letter from AAA with the trial court. The letter indicated the organization's refusal to administer plaintiff's claim due to AAA's past dealings with defendant. The letter states that since AAA had declined arbitration, either party could seek relief through the courts. The trial court did not consider whether the phrase found in the sales invoice, "THE PUCHASER AGGRESS [sic] TO AN ARBITRATION," is an enforceable arbitration agreement, and this Court declines to do so now. The trial *749 court did find that plaintiff's effort to arbitrate the claim through AAA was a valid attempt at arbitration and denied the exception. This assignment of error lacks merit.
Return of the Purchase Price
Defendant argues that the trial court erred in awarding plaintiff the return of the purchase price, because plaintiff did not tender the vehicle for repairs, plaintiff refused to abide by the executed limited warranty, there was no proof any defect existed at the time of the sale and plaintiff knew the vehicle might soon need repairs. To maintain an action in redhibition to rescind a sale, the buyer must prove that a defect in the thing renders its use so inconvenient that he would not have bought it had he known of the defect; that the defect existed at the time of the sale, but was not apparent; and that the seller had the opportunity to repair the defect. La. C.C. art. 2520. A defect is presumed to have existed at the time of delivery of the thing sold if it appears within three days from that time. La. C.C. art. 2530.
In the present case, the truck that plaintiff purchased from defendant stopped working as plaintiff drove it home from defendant's place of business. Plaintiff had asked defendant about the "check engine" light on the truck, and defendant's agent said that the light was sensitive, but there was nothing wrong with the truck. Plaintiff testified that he told defendant he intended to drive the truck while performing pipeline work, and defendant's agent told him the truck would do the job. Plaintiff later informed defendant that the truck was not working, and defendant told plaintiff to replace the battery. Plaintiff did so and the truck still did not work. Plaintiff took the truck to Firestone for repairs at the request of defendant. It was there plaintiff learned that the engine was no good.
It is clear from plaintiff's testimony, corroborated by that of his spouse, that the truck had a redhibitory defect at the time of purchase. The only thing that might have been apparent to plaintiff about the defect was the lit "check engine" light. Plaintiff inquired about the light and was told that there was no problem with the truck. The truck stopped working within three days of the sale, and plaintiff attempted to have the truck repaired after notifying defendant that the truck was not running. Plaintiff is entitled to a return of the full purchase price, $13,699. See Watkins v. Freeway Motors , 29,385 (La. App. 2 Cir. 04/02/97), 691 So.2d 854.
Defendant argues that there was a limited warranty on the truck. The parties to a sale may agree to an exclusion or limitation of the warranty against redhibitory defects. The terms of the exclusion or limitation must be clear and unambiguous and must be brought to the attention of the buyer. La. C.C. art. 2548. There is nothing on the record which meets those qualifications. As noted previously, documents provided which are not on the record will not be considered on appeal. Defendant's second assignment of error is without merit.
Damages for Repairs and Attorney Fees
Louisiana Civil Code article 2545 states in pertinent part:
A seller who knows that the thing he sells has a defect but omits to declare it, or a seller who declares that the thing has a quality that he knows it does not have, is liable to the buyer for the return of the price with interest from the time it was paid, for the reimbursement of the reasonable expenses occasioned by the sale and those incurred for the preservation of the thing, and also for damages and reasonable attorney fees.
It is abundantly clear in the present case that defendant was aware of the *750 defect in the truck at the time of sale and attempted to hide the defect from plaintiff. Defendant's agent asked plaintiff on the test drive if he felt any shaking under the truck or if he heard noises coming from under the truck. Also, the "check engine" light on the truck was lit, and when plaintiff inquired about the light, defendant's agent said that there was nothing wrong with the truck. When plaintiff returned to defendant's business, Moghimi refused to return the purchase price, called the police on plaintiff, and lied to the police about plaintiff's paperwork. Plaintiff was forced to get a ride to his work in Pennsylvania and share expenses with a coworker.
Defendant's behavior and the inconvenience and loss of time and money to the plaintiff warrant the trial court's award of the return of the purchase price, damages, and attorney fees. Defendant's third and fourth assignments of error lack merit.
CONCLUSION
For the foregoing reasons, we affirm the trial court's judgment. Costs of this appeal are assessed to defendant, European Service, Inc.

No judgment appears in the record. At the April 10, 2016, trial, Moghimi complained to the court that he had not been served with the judgment and neither had defendant's agent for service. Plaintiff's counsel said that there weren't any pleadings to strike, only defendant's exception which had been denied.

The motion for a continuance does not appear in the record.

Service notifying the parties of the trial was issued on April 6, 2017. Service was issued to European Service, Inc., 2111 Louisville Avenue, Monroe, LA 71201.